**BRONSON LAW OFFICES, P.C.**
480 Mamaroneck Avenue, Harrison, NY 10528
42 Catharine Street, Poughkeepsie, NY 12601
Telephone:
914-269-2530
Fax: 888-908-6906

H. Bruce Bronson, Jr., Esq.
(admitted NY & the District Courts of CT)
Email: hbbronson@bronsonlaw.net

of Counsel:
Victoria Lehning, Esq.
Lehninglaw@Yahoo.com

April 24, 2019

Honorable Robert D. Drain
United States Bankruptcy Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

**Re: Creative Learning Systems, LLC; case no. 18-23814 (RDD)**

Dear Judge Drain:

    I represent Creative Learning Systems, LLC (the "Debtor") in the above referenced case. This letter is intended to serve as an update and status letter as to the Debtor's activities and plans as to the school ("School") that it is operating as a Goddard School.

    On April 17, 2019 Debtor filed a motion for DIP financing (the "Motion"). Goddard Systems, Inc. ("GSI") objected to the Motion and on April 19, 2019, the Court denied Debtor's motion for DIP financing; however, left open the ability for the Debtor to return to court in the event the franchisor would not or could not provide DIP financing.

    After several conversations with GSI's counsel and after review of GSI's proposed order and promissory note it was mutually determined that we could not reach agreement.

## BACKGROUND

1. The Debtor filed for Chapter 11 bankruptcy on November 26, 2019.

2. The Debtor is a franchisee of GSI.

3. The Debtor purchased the business in a previous bankruptcy and continued the business as a Goddard School.

4. The Debtor hired a broker and marketed the School for several months with little interest, except from Vladimir Breyter.

5. Mr. Breyter had extensive discussions with the owner of Debtor, Annette Cunha ("Annette").

6. Mr. Breyter determined that he was interested in acquiring the School as an operating business and was willing to fund the purchase of the School.

7. On April 5, 2019, BFT II, LLC ("BFT"), an entity managed by Mr. Breyter, entered into a management agreement that gave BFT full economic control of the Debtor, so that Mr. Breyter could make sure that the Debtor was run appropriately from an administrative, and Bankruptcy Court perspective. BFT did not desire to, and to date has not, exercised any control over the business operations of the Debtor. BFT's actions to date have been limited to the actions it directed Debtor to take in order to advance the Debtor's proceedings in Bankruptcy Court, and the institution of limited financial controls.

8. Pursuant to the management agreement and with the agreement of Annette, Debtor's bankruptcy counsel was replaced with our office as of April 17, 2019.

9. The Motion was prepared, and a court hearing held on April 19, 2019.

10. At the hearing the Court denied Debtor's motion and allowed GSI to fund the Debtor.

11. After several discussions with GSI's counsel and an exchange of documents, it was determined that the parties could not come to agreement. It is the Debtor's view, that it is impermissible under the Bankruptcy Code for the Debtor to shut down operations of the School. The vast majority of the value of the Debtor's estate is the going concern value of the business. This value would be virtually eliminated if the School were to shut down. This would seem to be in breach of the fiduciary obligations of the Debtor to the Creditors. Additionally, Annette did not want to guarantee the loan as was required by GSI's proposal.

12. It is important to note that under the post-termination covenants of the Franchise Agreement, if they are allowed to be enforced, it would be impossible for the Debtor to resume operation as a child care facility.

13. Due to GSI's objection to BFT and Vladimir Breyter's involvement in management, BFT and Annette have novated the management agreement and participation by BFT or Mr. Breyter in the Debtor.

14. The Debtor contends that it has been and continues to operate in compliance with applicable State laws. Under New York State regulations, a child care facility must meet a multitude of regulations, and the Debtor is regularly inspected by the State for compliance. The Debtor contends that:

    a. The regulations are primarily concerned with the physical space used to provide child care services, procedures related to the care and safety of children, maintenance of records, and with the training and qualifications

of the individuals directly caring for children, as well as the individual serving as the Director of the child care center.

   b. The critical individual, from the standpoint of State regulations, is the Director of the child care facility. That role has been, and is currently filled by Alexa Ward, an employee of the Debtor.

   c. As Director Ms. Ward directs and controls the daily operations of the School.

15. The retention of the Bronson Law Offices, P.C. (the "Firm") was affirmed by Annette as of April 17, 2019 and the Firm is working closely with Annette to attempt to sell Debtor to Mr. Breyter

## **DEBTOR'S INTENTIONS**

16. Debtor proposes to sell Debtor to BFT for consideration equal to the outstanding debt of Debtor, as modified by agreement with the secured creditor and the landlord.[1]

17. The School would be closed as a Goddard School and all proprietary property returned to the GSI.

18. The School would re-open as a non-Goddard School the next day and operations would resume as an independent School.

19. The Debtor will take all reasonable steps requested by GSI to provide for an orderly transition that protects GSI's proprietary property and preserves the value of the Debtor's estate.

20. It is Debtor's desire to reject the franchise as an executory contract as soon as possible; provided that the restrictive post-closing covenants do not apply.

21. Debtor would accommodate GSI in allowing it to follow its school closing protocols; provided, that the value of the School is not destroyed by an extensive period of time when the School would not be open.

22. All State licensing requirements would be met in that the Debtor, Creative Learning Solutions, LLC, is licensed, and the Director of the school is approved by New York State.

---

[1] It is Mr. Breyter's intention to negotiate a new lease with the landlord with payment of some of the back due amounts owed to the landlord and to assume the secured debt. All other legitimate debt of Debtor would be paid off upon purchase, including the administrative expense amount owed to GSI, the franchisor.

3

23. Mr. Breyter is an investment banker by trade and works for an investment banking firm located in New York City. He will continue to advise the Debtor in an unpaid capacity in an effort to provide funding and business acumen to Debtor.

24. Mr. Breyter has acknowledged that the Firm represents Debtor and has a duty of loyalty only to Debtor and not to either Mr. Breyter or Annette.

## DIP FINANCING

25. The Debtor asks that the Dip Financing Motion be redetermined by the Court so that payroll can be paid this Friday, April 26, 2019.

26. Debtor contends that without the Dip Financing that Debtor will lose its employees abruptly and be closed without warning to the parents of the children that attend the School.

27. Debtor also contends that the Dip Financing will allow BFT to propose and consummate a Bankruptcy Code §363(f) sale that will pay the majority of Debtor's creditors in full.

28. GSI's proposed closing of the School would result in no value to the other creditors who would receive nothing.

29. Debtor has revised the Loan Agreement previously submitted to Court which is attached hereto as Exhibit A.

## CONCLUSION

30. The Debtor has a viable plan to sell the company for the highest and best offer which after an extensive marketing effort has yielded only one purchaser, BFT.

31. The closing of the School under the approach set forth by GSI (where the School would close permanently) would result in a total loss of value that would not recompense any of the creditors.

32. Debtor respectfully requests that the Court approve the DIP financing necessary to fund payroll for the Debtor in accordance with the terms set forth in the Loan Agreement attached as Exhibit A.

Very truly yours,

/s/ *H. Bruce Bronson*
H. Bruce Bronson



EXHIBIT A

# LOAN AGREEMENT

A A EATI E
EA I TE T

T H **Borrower**

A B

B T II

A **Lender**

**WITNESSETH:**

**WHEREAS,** B

T **Code**

B B

**WHEREAS,** **Loan**

**WHEREAS,** B

B

**WHEREAS,** B

**NOW THEREFORE,**

**Agreement:** T

A

**Termination of Manger's Agreement; Amendment of Operating Agreement; Resignation as Manager:**

A A
A B A B

A
B B T

**Advance:** B

I TEE TH A A
B B
T B
T

**Borrower Representations:** B

**Exhibit A**

**Interest and Term:** T

B                                              B

           B

**Repayment Fee:**  A

   B

**Conversion to Equity:** T

**Credit Bidding:** T

**Administrative Claim:**

                                    B

**Covenants**  T    B                                    T

                                                E

                                                        B

           B

    T    B

I A

B

B

11. **Events of Default:** A E

T B

B

A

B

B

B

T

B

*pari passu*

B B

T   B

12. **Event of Default:** E

13. **Inspection:** B

B

**Final Order:** T   A

B A

B

**Allocation of Payments:**

**Waiver of Presentment:** B

**Non-Wavier:**

**Severability:** I

**Notice** A

**Governing Law:** T

I

**LENDER:**

B T II

B

**Vladimir Breyter, Sole Manger**

**BORROWER:**

   EATI  E  EA   I      TE
    B A THE      A     H

B
A

A

EXHIBIT A

|  | 4/16 - 4/30 | 5/1 - 5/15 |
|---|---:|---:|
| **Cash Revenue** |  | **85,000** |
|  |  |  |
| Expenses |  |  |
| Rent & CAM | – | (10,000) |
| Utilities | – | (591) |
| Telephone | – | (251) |
| Payroll | (32,000) | (32,000) |
| Employee Cost | – | (1,415) |
| Office Exp. | – | (3,351) |
| Transportation | – | (286) |
| Franchise Royaly Fee | – | (7,033) |
| Franchise Advertising Fee | – | (2,800) |
| School Supplies | – | (1,162) |
| Technology | – | (307) |
| Food/Snack Supplies | – | (2,339) |
| Build Maint. | – | (3,260) |
| Trustee Fee | (2,925) | – |
| Profl Fees | – | (5,000) |
| Insurance | – | (1,346) |
| Other | – | (3,647) |
| **Total Expenses** | **(34,925)** | **(74,788)** |
|  |  |  |
| **Net Change in Cash** | **(34,925)** | **10,212** |
|  |  |  |
| Cash on Hand | 20,496 | 5,571 |
| Net Change in Cash | (34,925) | 10,212 |
| **Proposed DIP Financing** | **15,000** |  |
| Surplus / (Shortfall) | 571 | 15,783 |

Note: In addition to the Franchise fees listed above, there is a futher $19,278 of unpaid Franchise Fees from February and March