**BRONSON LAW OFFICES, P.C.**
480 Mamaroneck Avenue, Harrison, NY 10528
42 Catharine Street, Poughkeepsie, NY 12601
Telephone:
914-269-2530
Fax: 888-908-6906

H. Bruce Bronson, Jr., Esq.
(admitted NY & the District Courts of CT)
Email: hbbronson@bronsonlaw.net

of Counsel:
Victoria Lehning, Esq.
Lehninglaw@Yahoo.com

April 24, 2019

Honorable Robert D. Drain
United States Bankruptcy Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

**Re: Creative Learning Systems, LLC; case no. 18-23814 (RDD)**

Dear Judge Drain:

I represent Creative Learning Systems, LLC (the "Debtor") in the above referenced case. This letter is intended to serve as an update and status letter as to the Debtor's activities and plans as to the school ("School") that it is operating as a Goddard School.

On April 17, 2019 Debtor filed a motion for DIP financing (the "Motion"). Goddard Systems, Inc. ("GSI") objected to the Motion and on April 19, 2019, the Court denied Debtor's motion for DIP financing; however, left open the ability for the Debtor to return to court in the event the franchisor would not or could not provide DIP financing.

After several conversations with GSI's counsel and after review of GSI's proposed order and promissory note it was mutually determined that we could not reach agreement.

## BACKGROUND

1. The Debtor filed for Chapter 11 bankruptcy on November 26, 2019.

2. The Debtor is a franchisee of GSI.

3. The Debtor purchased the business in a previous bankruptcy and continued the business as a Goddard School.

4. The Debtor hired a broker and marketed the School for several months with little interest, except from Vladimir Breyter.

5. Mr. Breyter had extensive discussions with the owner of Debtor, Annette Cunha ("Annette").

6. Mr. Breyter determined that he was interested in acquiring the School as an operating business and was willing to fund the purchase of the School.

7. On April 5, 2019, BFT II, LLC ("BFT"), an entity managed by Mr. Breyter, entered into a management agreement that gave BFT full economic control of the Debtor, so that Mr. Breyter could make sure that the Debtor was run appropriately from an administrative, and Bankruptcy Court perspective. BFT did not desire to, and to date has not, exercised any control over the business operations of the Debtor. BFT's actions to date have been limited to the actions it directed Debtor to take in order to advance the Debtor's proceedings in Bankruptcy Court, and the institution of limited financial controls.

8. Pursuant to the management agreement and with the agreement of Annette, Debtor's bankruptcy counsel was replaced with our office as of April 17, 2019.

9. The Motion was prepared, and a court hearing held on April 19, 2019.

10. At the hearing the Court denied Debtor's motion and allowed GSI to fund the Debtor.

11. After several discussions with GSI's counsel and an exchange of documents, it was determined that the parties could not come to agreement. It is the Debtor's view, that it is impermissible under the Bankruptcy Code for the Debtor to shut down operations of the School. The vast majority of the value of the Debtor's estate is the going concern value of the business. This value would be virtually eliminated if the School were to shut down. This would seem to be in breach of the fiduciary obligations of the Debtor to the Creditors. Additionally, Annette did not want to guarantee the loan as was required by GSI's proposal.

12. It is important to note that under the post-termination covenants of the Franchise Agreement, if they are allowed to be enforced, it would be impossible for the Debtor to resume operation as a child care facility.

13. Due to GSI's objection to BFT and Vladimir Breyter's involvement in management, BFT and Annette have novated the management agreement and participation by BFT or Mr. Breyter in the Debtor.

14. The Debtor contends that it has been and continues to operate in compliance with applicable State laws. Under New York State regulations, a child care facility must meet a multitude of regulations, and the Debtor is regularly inspected by the State for compliance. The Debtor contends that:

    a. The regulations are primarily concerned with the physical space used to provide child care services, procedures related to the care and safety of children, maintenance of records, and with the training and qualifications

of the individuals directly caring for children, as well as the individual serving as the Director of the child care center.

    b. The critical individual, from the standpoint of State regulations, is the Director of the child care facility. That role has been, and is currently filled by Alexa Ward, an employee of the Debtor.

    c. As Director Ms. Ward directs and controls the daily operations of the School.

15. The retention of the Bronson Law Offices, P.C. (the "Firm") was affirmed by Annette as of April 17, 2019 and the Firm is working closely with Annette to attempt to sell Debtor to Mr. Breyter

## DEBTOR'S INTENTIONS

16. Debtor proposes to sell Debtor to BFT for consideration equal to the outstanding debt of Debtor, as modified by agreement with the secured creditor and the landlord.[1]

17. The School would be closed as a Goddard School and all proprietary property returned to the GSI.

18. The School would re-open as a non-Goddard School the next day and operations would resume as an independent School.

19. The Debtor will take all reasonable steps requested by GSI to provide for an orderly transition that protects GSI's proprietary property and preserves the value of the Debtor's estate.

20. It is Debtor's desire to reject the franchise as an executory contract as soon as possible; provided that the restrictive post-closing covenants do not apply.

21. Debtor would accommodate GSI in allowing it to follow its school closing protocols; provided, that the value of the School is not destroyed by an extensive period of time when the School would not be open.

22. All State licensing requirements would be met in that the Debtor, Creative Learning Solutions, LLC, is licensed, and the Director of the school is approved by New York State.

---

[1] It is Mr. Breyter's intention to negotiate a new lease with the landlord with payment of some of the back due amounts owed to the landlord and to assume the secured debt. All other legitimate debt of Debtor would be paid off upon purchase, including the administrative expense amount owed to GSI, the franchisor.

3

23. Mr. Breyter is an investment banker by trade and works for an investment banking firm located in New York City. He will continue to advise the Debtor in an unpaid capacity in an effort to provide funding and business acumen to Debtor.

24. Mr. Breyter has acknowledged that the Firm represents Debtor and has a duty of loyalty only to Debtor and not to either Mr. Breyter or Annette.

## DIP FINANCING

25. The Debtor asks that the Dip Financing Motion be redetermined by the Court so that payroll can be paid this Friday, April 26, 2019.

26. Debtor contends that without the Dip Financing that Debtor will lose its employees abruptly and be closed without warning to the parents of the children that attend the School.

27. Debtor also contends that the Dip Financing will allow BFT to propose and consummate a Bankruptcy Code §363(f) sale that will pay the majority of Debtor's creditors in full.

28. GSI's proposed closing of the School would result in no value to the other creditors who would receive nothing.

29. Debtor has revised the Loan Agreement previously submitted to Court which is attached hereto as Exhibit A.

## CONCLUSION

30. The Debtor has a viable plan to sell the company for the highest and best offer which after an extensive marketing effort has yielded only one purchaser, BFT.

31. The closing of the School under the approach set forth by GSI (where the School would close permanently) would result in a total loss of value that would not recompense any of the creditors.

32. Debtor respectfully requests that the Court approve the DIP financing necessary to fund payroll for the Debtor in accordance with the terms set forth in the Loan Agreement attached as Exhibit A.

Very truly yours,

/s/ *H. Bruce Bronson*
H. Bruce Bronson

EXHIBIT A

# LOAN AGREEMENT

Agreement made this 24th day of April, 2019, by and between CREATIVE LEARNING SYSTEMS LLC d/b/a The Goddard School, debtor-in-possession, having a principal place of business at 62 Triangle Ctr, Yorktown Heights, NY 10598 ("**Borrower**"), Ms. Annette Cunha, a resident of the State of New York and sole member of the Borrower ("Cunha"), and BFT II, LLC, having a principal place of business at 90 State Street, Suite 700, Office 40, Albany, NY 12207 (hereinafter referred to as "**Lender**").

## WITNESSETH:

**WHEREAS,** Borrower is a debtor-in-possession pursuant to a voluntary petition for reorganization filed under Chapter 11 of Title 11 of the United States Code (the "**Code**") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") as Case Number 18-23814 (RDD) and who has continued in the possession of its property and the management of its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Code; and

**WHEREAS,** Lender desires to provide a certain loan (the "**Loan**") to partially fund current business operations of the Debtor as more particularly set forth herein; and

**WHEREAS,** Borrower and Lender have engaged in negotiations with respect to Lender funding ongoing operations of Borrower; and

**WHEREAS,** Borrower is unable to obtain funds on terms any less stringent than those provided herein.

**NOW THEREFORE,** in consideration of the foregoing and the mutual covenants contained herein, the parties agree as follows:

1. **Agreement:** The parties hereto agree to the substance of the proposed lending as described below, which may not be modified without Lender's prior written approval. A promissory note will be executed by the parties in accordance with the terms set forth herein.

2. **Termination of Manger's Agreement; Amendment of Operating Agreement; Resignation as Manager:** Lender and Cunha agree to terminate in its entirety that certain Manager's Agreement dated April 5th, 2019. Cunha further agrees that that certain Operating Agreement of the Borrower dated April 5th, 2018 is hereby amended to make the Borrower member managed, as that term is used under New York State Law. Cunha further agrees not to further amend the Operating Agreement until the completion of the bankruptcy case of the Borrower. Further, Lender agrees to resign as Manager of the Borrower. This section 2 contains the only obligations of Cunha under this loan agreement.

3. **Advance:** Lender shall advance to Borrower the aggregate sum of up to FIFTEEN THOUSAND ($15,000.00) DOLLARS (the "Loan"), on an as-needed basis, pursuant to Section 364(bc)(1) of the Bankruptcy Code by the Bankruptcy Court authorizing Lender to advance said sums. The Borrower may repay and reborrow funds under this Loan up to a maximum outstanding balance of Fifteen Thousand ($15,000) Dollars.

4. **Borrower Representations:** Borrower has represented to Lender, and Lender accepts such representation, that the loan proceeds shall be used solely for the purposes of financing ordinary and customary business operations of the Debtor, on an as-needed basis and substantially in accordance with the budget as annexed hereto as **Exhibit A** or as otherwise agreed to by the Lender in connection with the usual and ordinary course business operations.

5. **Interest and Term:** The loan shall accrue interest at the rate of seven percent (7%) on the average daily outstanding balance and principal and interest shall be due upon the earlier of: (a) 60 days from the date of the remittance of the Loan; (b) dismissal of Borrower's Chapter 11 case; (c) conversion of Borrower's Chapter 11 case to a proceeding under Chapter 7 of the Bankruptcy Code

6. **Repayment Fee:** At any repayment or prepayment of any principle owned under the Loan, the Borrower shall also pay a fee equal to 10% of such principle to the Lender.

7. **Conversion to Equity:** The loan may be converted to equity of the Debtor at any time, in part or in whole, at the option of Lender on the basis of a pre-money valuation of $5,000.

8. **Credit Bidding:** The loan may be credit bid in a sale of the Debtor's assets.

9. **Administrative Claim:** Lender shall be granted a superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code in the Debtor's Chapter 11 case to the extent of any advances made hereunder.

10. **Covenants:** The Borrower agrees to the following covenants. The breach of any of the covenants contained in this agreement shall constitute and Event of Default.

    a) Within 10 days of the first advance by Lender under this Loan the Borrower will submit to the Bankruptcy Court, and use its best efforts to obtain approval of a 363 sale of substantially all of it assets, free and clear of any liabilities

    b) The Borrower will operate its business in the normal course and as a going concern, taking no action in furtherance of any winding down, closing, shutting down, or in any other way ceasing, pausing or disrupting operations as a day care center

c) In the event that the Franchise Agreement dated July 14, 2015 is terminated, or any action is brought before the Bankruptcy Court to allow a termination of said agreement, the Borrower will take all necessary actions, including any actions in its chapter 11 bankruptcy proceedings, to enable it to preserve to the maximum extent possible its ability to operate, without interruption, as a non-franchised day care center.

11. **Events of Default:** Any of the following events will constitute an Event of Default:

a) The entry of an order dismissing the Borrower's chapter 11 case or converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code, or any filing by any party of a motion or other pleading seeking entry of such order;

b) A trustee, responsible officer or an examiner having powers related to operation of the business under Bankruptcy Code section 1104 is appointed or elected in the chapter 11 case, the Borrower applies for, consents to, or acquiesces in, any such appointment, or the Bankruptcy Court shall have entered an order providing for such appointment;

c) The bringing of any motion or taking of any action seeking entry of an order, or the entry of an order by the Bankruptcy Court, (i) granting superpriority administrative expense status to any claim *pari passu* with or senior to the claims of Lender, (ii) permitting the Borrower to obtain financing under Section 364 of the Bankruptcy Code;

d) The Bankruptcy Court entering an order authorizing the sale of all or substantially all of the assets of the Debtor unless such order contemplates repayment in full in cash of the proposed loan, together with accrued interest and the exit fee.

12. **Event of Default:** Should any Event of Default occur, all outstanding principle, accrued interest, and applicable exit fee will be immediately due and payable in cash.

13. **Inspection:** Lender will be entitled to, and Borrower agrees to allow the Lender to, to the extent permissible by applicable non-bankruptcy law, inspect the business premises of the Borrower, as well as its books and records, at any time during normal business hours.

14. **Final Order:** This Loan Agreement is expressly conditioned upon the entry of a final order by the Bankruptcy Court approving and authorizing this Agreement and the approval of the superpriority administrative status granted to Lender herein pursuant to Section 364(c)(1) of the Bankruptcy Code.

15. **Allocation of Payments:** Payments shall be first credited to any accrued interest and any remainder will be credited to principal.

16. **Waiver of Presentment:** Borrower waives presentment for payment, notice of dishonor, protest and notice of protest.

17. **Non-Wavier:** No failure or delay by Lender in exercising Lender's rights under this Note shall be considered a waiver of such rights.

18. **Severability:** In the event that any provision herein is determined to be void or unenforceable for any reason, such determination shall not affect the validity or enforceability of any other provision all of which shall remain in full force and effect.

19. **Notice** Any notices required or permitted to be given hereunder shall be given in writing and shall be delivered (a) in person, (b) by certified mail, postage prepaid, return receipt requested, (c) by facsimile, or (d) electronic mail (email), and such notice shall be made to the parties at the addresses listed below.

20. **Governing Law:** This loan agreement shall be governed by the laws of the State of New York

In witness whereof the parties have executed this agreement as of the date first above written.

**LENDER:**

BFT II, LLC

By: _____

**Vladimir Breyter, Sole Manger**

**BORROWER:**

CREATIVE LEARNING SYSTEMS, LLC
D/B/A THE GODDARD SCHOOL


By: _____
Annette Cunha, Sole Member


_____
Annette Cunha

# EXHIBIT A

|                            | 4/16 - 4/30 | 5/1 - 5/15 |
|----------------------------|-------------|------------|
| **Cash Revenue**           |             | 85,000     |
|                            |             |            |
| <u>Expenses</u>            |             |            |
| Rent & CAM                 | —           | (10,000)   |
| Utilities                  | —           | (591)      |
| Telephone                  | —           | (251)      |
| Payroll                    | (32,000)    | (32,000)   |
| Employee Cost              | —           | (1,415)    |
| Office Exp.                | —           | (3,351)    |
| Transportation             | —           | (286)      |
| Franchise Royaly Fee       | —           | (7,033)    |
| Franchise Advertising Fee  | —           | (2,800)    |
| School Supplies            | —           | (1,162)    |
| Technology                 | —           | (307)      |
| Food/Snack Supplies        | —           | (2,339)    |
| Build Maint.               | —           | (3,260)    |
| Trustee Fee                | (2,925)     | —          |
| Profl Fees                 | —           | (5,000)    |
| Insurance                  | —           | (1,346)    |
| Other                      | —           | (3,647)    |
| **Total Expenses**         | (34,925)    | (74,788)   |
|                            |             |            |
| **Net Change in Cash**     | (34,925)    | 10,212     |
|                            |             |            |
| Cash on Hand               | 20,496      | 5,571      |
| Net Change in Cash         | (34,925)    | 10,212     |
| **Proposed DIP Financing** | 15,000      |            |
| Surplus / (Shortfall)      | 571         | 15,783     |

Note: In addition to the Franchise fees listed above, there is a futher $19,278 of unpaid Franchise Fees from February and March