BRONSON LAW OFFFICES, P.C.
Counsel for the Debtor
480 Mamaroneck Ave.
Harrison, NY 10528
(914) 269-2530
888-908-6906 (fax)
hbbronson@bronsonlaw.net
H. Bruce Bronson, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
In re:

CREATIVE LEARNING SYSTEMS LLC,

                                                    Case No.: 18-23814 (RDD)

                                        Debtor.

                                                    Chapter 11

-----------------------------------------------------------------X

### PLAN OF REORGANIZATION

**CREATIVE LEARNING SYSTEMS LLC**., debtor and debtor-in-possession ("**Debtor**"),

hereby proposes  this plan of reorganization (the "**Plan**") under chapter 11 of the Bankruptcy Code

(the "**Code**"). Capitalized terms used in the Plan shall have the respective meanings set forth in

Article I below,  or as such terms may be defined elsewhere in the Plan. The Debtor is the proponent

of the Plan within the meaning of Section 1129 of the Code.

        **The Debtor reserves the right to alter, amend or modify this Plan up to and through its**
**substantial consummation.**

### SUMMARY

        This Plan is designed as a mechanism for the reorganization of Debtor. The Debtor operates a

day care center that has 10 classrooms, 2 offices, 1 multipurpose room and teachers room located at

62 Triangle Center, Yorktown Heights, NY 10598. Pursuant to the Plan, there will be six classes of

creditors with subclasses as follows:

**Class 1**: consists of all Allowed Priority Claims, other than Priority Tax Claims.

**Class 2**: consists of all Allowed Secured Claims.

**Class 3**: consists of the Allowed Unsecured Claim of EK Triangle LLC, the Debtor's landlord.

**Class 4**: consists of the Allowed Unsecured Claim of Goddard.

**Class 5**: consists of all general Allowed Unsecured Claims.

**Class 6:** consists of all Allowed Equity Interests.

In accordance with Section 1123 (a)(1) of the Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the foregoing Classes and are treated separately.

**YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY  AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE.  IF YOU DO NOT HAVE  AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

## ARTICLE I

### Definitions

For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1. "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering this Chapter 11 case allowed under Sections 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including compensation for all professional services and reimbursement of expenses awarded by the Bankruptcy Court.

2. "**Allowed Claim**" means (1) a Claim timely filed before the Bar Date and (a) as to which

no objection has been filed within the time fixed in the Plan or (b) as to which any objection that is filed (including an objection set forth in this Plan) has been subsequently settled, waived, withdrawn or denied by the Bankruptcy Court, (2) a Claim listed on the Bankruptcy Schedules and not designated as contingent, unliquidated or disputed, or (3) a Claim allowed pursuant to an order of the Bankruptcy Court.

3. **"Bankruptcy Code"** or **"Code"** shall mean the Bankruptcy Code, Title 11 U.S.C. Section 101 et. seq. as amended from time to time and applicable to this case.

4. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York or any other court exercising jurisdiction in this case.

5. **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, as now in effect or hereinafter amended.

6. **"Bankruptcy Schedules"** means the schedules of assets and liabilities, lists and statements of financial affairs, together with all amendments thereto, filed by the Debtor pursuant to Bankruptcy Rule 1007.

7. **"Bar Date"** means July 8, 2019 at 5:00 p.m., the deadline by which proofs of Claim were required to be filed with the Clerk of the Bankruptcy Court in this case.

8. **"BFT II, LLC"** means the manager of the Debtor.

9. **"Cash"** means cash or cash equivalent (a) of the Reorganized Debtor on hand as of the Effective Date and/or(b) realized from the Debtor's or Reorganized Debtor's business operations following the Effective Date.

10. **"Claim"** means a right to payment as set forth in Section 101(5) of the Bankruptcy Code.

11. **"Claimant"** means the holder of a Claim.

12. "**Class**" means a category of substantially similar Allowed Claims.

13. "**Confirmation**" means approval of this Plan by the Confirmation Order of the

Bankruptcy Court following a hearing and notice thereof in accordance with the

Bankruptcy Code and Bankruptcy Rules.

14. "**Confirmation Date**" shall mean the date of entry of the Confirmation Order.

15. "**Confirmation Hearing Date**" shall mean the date set by the Bankruptcy Court for the

hearing on confirmation of the Plan.

16. "**Confirmation Order**" shall mean the order of the Bankruptcy Court pursuant to

Section 1129 of the Bankruptcy Code confirming the Plan.

17. "**Creditor**" means a Person that has a Claim against the Debtor that arose on or before

the Petition Date or a Claim against the Debtor's estate of any kind specified in Section

502(g), 502(h) or 502(i) of the Code.

18. "**Debtor**" means Creative Learning LLC., a New York limited liability company.

19. "**Disclosure Statement**" means the Disclosure Statement for Debtor's Plan of

Reorganization including any Exhibits, attachments or amendments thereto, approved by

Order of the Bankruptcy Court.

20. "**Disputed Claim**" means:

(a) any Claim that is listed in the Debtor's Bankruptcy Schedules as being

disputed, contingent or unliquidated with respect to which no Proof of Claim has been

timely filed; and

(b) any filed Claim with respect to which an objection to the allowance

thereof, in whole or in part, has been interposed within the applicable period fixed by the

Bankruptcy Court and such Claim has not become an Allowed Claim.

4

21. "**Effective Date**" means the date upon which the Confirmation Order becomes a Final Order.

22. "**EK Triangle**" means EK Triangle, Debtor's landlord.

23. "**Final Order**" means an order of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review or rehearing has been waived or (b) the time to appeal or seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending.

24. "**Franchisor**" means Goddard Systems Inc.

25. "**Goddard**" means Goddard Systems Inc., the former franchisor to Debtor.

26. "**Government Bar Date**" means the deadline by which governmental units must file a proof of claim with the clerk of the Court in this case, which is July 8, 2019 at 5:00 p.m.

27. "**Impaired**" means impairment of a class of Claims under Section 1124 of the Bankruptcy Code.

28. "**Landlord**" means EK Triangle.

29. "**New Equity**" means new equity in the Debtor to be issued on the Effective Date, pursuant to the Plan.

30. "**New Lease**" means the new lease entered into by and between Debtor and EK Triangle that has been approved by the Bankruptcy Court or will be approved by the Bankruptcy Court as of the Confirmation Date, as an integral part of the reorganization.

31. "**Old Lease**" means the lease entered into by and between Debtor and EK Triangle that will be rejected on the date the New Lease is approved by the Bankruptcy Court, either pursuant to Confirmation or by separate motion.

32.  "**Petition Date**" means November 26, 2018, the date on which the Debtor filed its

voluntary Chapter 11 petition.

33. "**Plan**" means this Chapter 11 plan of reorganization filed by Debtor.

34. "**Priority Claim**" means all Claims that are entitled to priority pursuant to Bankruptcy

Code Section 507(a) with the exception of Administrative Expense Claims.

35. "**Priority Tax Claim**" means all Claims that are entitled to priority pursuant to

Bankruptcy Code Sections 502(i) and 507(a)(8).

36. "**Pro Rata**" means with respect to a class member, in the same proportion as the amount

of such member's Allowed Claim over the total Allowed Claims in such class.

37. "**Reorganized Debtor**" means the Debtor after the Effective Date.

38.  "**Secured Claim**" means a Claim secured by a lien, judgment lien, mortgage or security

interest on property of the Debtor's estate to the extent of the value of the property of the

Debtor's estate securing such Claim, and any valid and enforceable right of setoff.

39. "**Secured Creditor**" means the holder of an Allowed Secured Claim.

40. "**Unsecured Claim**" means a Claim that is not a Secured Claim, Administrative Expense

Claim, Priority Claim, or Priority Tax Claim.

41. "**Unsecured Creditor**" means a holder of an Allowed Unsecured Claim.

42. "**U.S. Trustee Fees**" means all fees payable pursuant to 28 U.S.C. § 1930, and statutory

interest thereon.

43. "**Vlad Breyter**" means the individual controlling BFT.

All rules of construction contained in Section 102 of the Code apply in the construction of the Plan.

## ARTICLE II

### UNCLASSIFIED ADMINISTRATIVE EXPENSE
### CLAIMS, PRIORITY TAX CLAIMS AND , U.S. TRUSTEE FEES

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, including amounts owed to the U.S. Trustee's office, and Priority Tax Claims, which shall be afforded the following treatment:

1. **Administrative Expense Claims Administrative Expense Claims**. All Administrative Expense Claims shall be paid on the later of the Effective Date, or entry of an order of the Bankruptcy Court allowing the same, unless otherwise agreed upon by the parties. The primary Administrative Expense Claims consist of (1) professional fees and expenses for the Debtor's general bankruptcy counsel, Bronson Law Offices, P.C. which are only to be paid pursuant to approved fee applications upon notice and hearing, (2) professional fees and expenses for the Debtor's prior bankruptcy counsel which are not expected to exceed the retainer received by such counsel, (3) Franchisor fees Post Petition Date in the claimed amount of $23,076.34, (4) EK Triangle, the Landlord, which has an administrative claim which amount will be waived upon confirmation of a Plan pursuant to an agreement between the Landlord and Vladimir Breyter, the limited guarantor under the new lease, and (5) the super priority admin claim for the balance of the BFT Loan.

1. **Priority Tax Claims**. Priority Tax Claims of governmental units are required to be paid over a period commencing on the Effective Date and ending on the date that is five (5) years from the Petition Date, in equal monthly installments bearing interest as provided in their respective proofs of claim. The Department of the Treasury, Internal Revenue Service has filed a proof of claim stating that $4,962.71 is owed as a priority claim;however, the IRS has withdrawn that claim. claim. **U.S. Trustee Fees**. Any unpaid U.S. Trustee Fees

shall be paid in Cash on the Effective Date, or immediately thereafter

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

1.      1 **Class 1-Allowed Priority Claims.** Class 1 consists of all Allowed Priority Claims,

other than Priority Tax Claims.

**Treatment**-The Allowed Priority Claims, if any, shall be paid in full in cash on the

Effective Date. There are not expected to be any Allowed Priority Claims, other than

Priority Tax Claims which are not included in this class and are addressed above.

**Right to Vote**. Class 1 is not Impaired under the Plan and is not entitled to vote to accept

or reject the Plan.

2.   **Class 2-Secured Claims.** There are two Allowed Secured Claims from (1) FC

Marketplace, LLC. ((**"FC Marketplace"**) that filed proof of claim no. 7-1 in the amount of

$69,909.62, and (2) the Landlord, EK Triangle, in the amount of $50,000, relating to

Debtor's deposit (the "**Secured Claims**") .

**Treatment-Class 2.** The Allowed Secured Claim of the Secured Lender shall be paid over

a period of five years in equal monthly payments, at the annual interest rate of ten percent

(10%). Based on the Secured Creditor's claim amount, and assuming it is correct, Debtor

will pay $1,485.37  per month (principal and interest) for the next 60 months beginning on

the Effective Date. The Secured Creditor will be granted a replacement lien on all property

and assets of Debtor. The Landlord, EK Triangle has agreed to waive its claim and vote in

favor of the Plan as a condition of Vladimir Breyter providing a limited guarantee of the

Debtor's New Lease.

**Right to vote.** Class 2-Secured Claims are Impaired and are entitled to vote.

3. **Class 3-Unsecured Claim of EK Triangle LLC.** Class 3 Unsecured Claim consists of the Allowed Unsecured Claim of EK Triangle LLC, the landlord. Approximately $86,907.26 is owed to EK Triangle as a pre-petition debt, of which $36,907.26 is unsecured.

**Treatment.** EK Triangle, Debtor and Vladimir Breyter (limited guarantor) have agreed that $0 will be paid on this claim based on EK Triangle and Debtor entering the New Lease on the Effective Date. As a condition of the New Lease and the guarantee of Vladimir Breyter, EK Triangle has agreed to vote in favor of the Plan.

**Right to vote.** Class 3-Unsecured Claim of EK Triangle is entitled to vote, and subject to Court approval of the New Lease EK Triangle has agreed to vote in favor of the Plan.

4. **Class 4-Unsecured Claims of Franchisor.** Class 4 Unsecured Claims consists of the Unsecured Claim of the Franchisor. The Franchisor has filed a claim of $611,627 pursuant to proof of claim no. 10. This claim is for future royalties that Franchisor will not receive since the franchise was terminated. Debtor reserves the right to dispute this claim.

**Treatment-**Allowed Class 4 claims will be paid 2% of the Allowed Claim on the Effective Date if the Franchisor does not object to the Plan or over five years payable in equal monthly payments at 5% per annum, if it does object to the Plan.

**Right to Vote-**Class 4 Unsecured Claims of Franchisor are Impaired and entitled to vote.

5. **Class 5-Unsecured Claims.** Class 5 consists of the general Allowed Unsecured Claims. The Bar Date for filing claims is July 8, 2019.

**Treatment-**Allowed Class 5 Claims shall be paid 10% as set forth in the chart below.

**Right to vote.** Class 5-Unsecured Claims are impaired and thus entitled to vote.

Class 5 claims consist of the following:

| Claimant | POC or Petition No. | Amount Claimed | Amount to be paid on Effective Date | Claim Allowed? |
|---|---|---|---|---|
| Wells Fargo Bank, N.A.<br>PO Box 51174<br>Los Angeles, CA 90051 | 5-1 | $18,452.47 | $1,845 | Yes |
| Wells Fargo Financial Leasing<br>800 Walnut St.<br>MAX F0005-055<br>Des Moines, IA 50309 | 6-1 | $5,725.89 | $573 | Yes |
| Annette Cunha *<br>401 Vista on The Lake<br>Carmel, NY 10512 | 8 | $19,563.78<br><br>Duplicate of 5-1 | $0 | No (not a proper claim because it is a personal guarantee of the Debtor's obligation to Wells Fargo as set forth in POC 5-1was used to purchase equity) |
| Antonio Cunha**<br>171 Gleneida Ridge<br>Carmel, NY 10512 | Petition (3.3) | $180,000 | $0 | No (not a proper claim since borrowings were for personal use in acquiring the equity of Debtor). |
| Antonio Cunha***<br>171 Gleneida Ridge<br>Carmel, NY 10512 | Petition ($100,000 profit from sale) | $0 | $0 | No (not a proper claim-relates to equity) |
| CD an infant by his m/n/g Lori Delgado<br>c/o Neimark & Neimark LLP<br>37 Congers Road<br>New City, NY 10956 | 9-1 | Unliquidated | $0 | By stipulation claim is to be paid to the extent of insurance by the insurance company |
| | | Total: | $2,418 | |

**\*This claim of Annette Cunha is for the Wells Fargo Bank, N.A., credit card debt for which she may be personally liable. As to the Debtor, it is duplicative of claim 5-1 and therefore is disallowed in its entirety.**

**\*\* This claim is for equity contributed by Antonio Cunha to the Debtor and thus is not a proper claim and is disallowed in its entirety.**

**\*\*\*This claim is an obligation of Annette Cunha and not of Debtor and therefore it is disallowed in its entirety.**

  **Class 6-Equity Interests**. Class 6 consists of the Equity Interest of BFT and Annette Cunha.

**Treatment**-On the Effective Date, all 6 Equity Interests shall be cancelled without any distribution on

account of such Equity Interests.

  **Right to vote.** The holders of the Class 6 Interests under this Plan are deemed to have rejected

the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of the Equity Interests

are not entitled to vote to accept or reject the Plan.

## ARTICLE IV

## IMPLEMENTATION OF THE PLAN

On the Effective Date the Debtor will issue new equity interests ("**New Equity**") in exchange for a contribution to be made by BFT. BFT will, on the Effective Date, contribute cash sufficient to pay (1) Administrative Expenses, (2) the amounts necessary to pay the unsecured creditors as set forth above and in the Plan, and (3) in its discretion funds necessary for the operation of the Debtor's day care facility for the near future. The issuance of the New Equity will not require any further approval on the Effective Date.

Payments to holders of Allowed Claims under the Plan will be made by the Debtor or Reorganized Debtor from (a) Cash of the reorganized Debtor on hand as of the Effective Date, (b) Cash realized from the Reorganized Debtor's operations following the Effective Date, and (c) Cash contributed or loaned by BFT. Professional fees for services rendered by the Debtor's attorneys subsequent to the Effective Date in connection with the Plan or the Debtor's chapter 11 case, and reimbursement of expenses relating to such services may be paid by the Debtor without prior court approval, to the extent that section 1123(a)(6) of the Code is applicable.

## ARTICLE V

## PROVISIONS GOVERNING DISTRIBUTIONS

1.    **1 Disbursements.** All distributions under the Plan shall be made by the Debtor/Reorganized Debtor.

2.    **Rights and Powers of the Debtor.** The Debtor shall be empowered to (i) execute all agreements, instruments and other documents necessary to perform its duties under the Plan (ii) direct that all distributions contemplated by the Plan be made, (iii) prosecute, settle

and enforce any objections or other causes of action on behalf of the estate, and (iv)

exercise such other powers as may be deemed necessary and proper to implement the Plan.

3. **Claim Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, only the

Debtor shall have standing to file and prosecute an objection to claims. All objections shall

be filed and served no later than 90 days after the Effective Date of the Plan in accordance

with the applicable provisions of the Code and Bankruptcy Rules.

4. **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no

payment or distribution shall be made with respect to any portion of a claim under

objections (i.e. a "**Disputed Claim**") until all objections are resolved and such Disputed

Claim becomes an Allowed Claim by stipulation or order of the Bankruptcy Court. Instead,

any monies that otherwise would be paid if a Disputed Claim is finally Allowed shall be

held by Debtor until resolution at which time such withheld Cash shall be paid to the holder

of such Allowed Claim.

5. **Undeliverable Distributions.** If a distribution to the holder of any Allowed Claim is

returned by the recipient of the distribution, then no further distribution shall be made to

such creditor. Any undeliverable distribution shall revert to the Debtor/Reorganized

Debtor. Debtor will use reasonable efforts to locate holders of Allowed Claims.

**Management of the Debtor.** After the Effective Date the Debtor will be controlled by BFT, which

is controlled by Vladimir Breyter.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

To the extent the Debtor is a party to an executory contract or unexpired lease which has not

otherwise been assumed or rejected prior to the Effective Date, the Confirmation Order shall constitute

an Order authorizing the assumption or confirming the rejection of such executory contract or unexpired lease pursuant to Section 365 of the Code. In the event any lease is to be assumed that is not paid currently, Debtor will as a condition of assumption, cure the lease by making payment of the amounts owed or by entering into a stipulation or other agreement with creditor. Any party objecting to the assumption or cure amount shall have until ten days prior to the Confirmation Hearing to oppose such assumption or cure amount.

**New Lease.** Debtor has negotiated extensively with the Landlord and entered into a new lease (the "**New Lease**") with Landlord. The New Lease will be approved by the Court as a condition of Confirmation of this Plan. The Old Lease with Landlord will be superseded by the New Lease. The New Lease is for a term of five years (with an option for an additional 5 years) commencing upon the approval of the New Lease by the Court at $10,000 per month, subject to a step-up to $20,000 a month and further escalations as more fully described in the New Lease. The lease is for the space from which the Debtor currently operates. Vladamir Breyter has provided a Limited Guarantee of the New Lease pursuant to which the Landlord has agreed to waive certain Claims.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

**1. Orders in Aid of Consummation.** Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more orders in aid of implementation of the Plan.

**2. Compliance with Tax Requirements.** In connection with the Plan, the Debtor/Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions under the Plan shall be subject to such

withholding and reporting requirements.

**3. Due Authorization by Creditors.** Each and every holder of an Allowed Claim who accepts a distribution provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distribution provided for in the Plan on account of such Claim and that there are no outstanding liens, encumbrances, commitments, agreements, or understandings, express or implied that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such creditor under the Plan.

**4. Filing of Additional Documents**. Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**5. Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**6. Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provision of Bankruptcy Rule 9006(a) shall apply.

**7. Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or permitted assign of such entity.

**8. Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) to the Debtor/Reorganized Debtor at: Bronson Law Offices, P.C., 480 Mamaroneck Avenue, Harrison, NY 10528, Attention H. Bruce Bronson, Esq.;

(b) if to any claimant at (i) the address set forth on the respective proofs of Claim filed by such Claimants; (ii) the addresses set forth in any written notices of address changes delivered to the Debtor/Reorganized Debtor after the Effective Date; or (iii) the address reflected in the Bankruptcy Schedules if no proof of Claim is filed and the Debtor has not received a written notice of a change of address; and

(c)  if to any entity that has filed a notice of appearance, at the address(es) set forth on such notice of appearance.

**9. Governing Law.** The rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and Bankruptcy Rules and the laws of the State of New York, as applicable.

**10. Other actions.** Nothing contained herein shall prevent the Debtor from taking such action as may be reasonably necessary to carry out this Plan, although such actions may not specifically be provided for within the Plan.

**11. Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**12. Causes of Action.** The Debtor is not aware of any causes of action that its bankruptcy estate may have, including actions under Chapter 5 of the Bankruptcy Code. Nevertheless, they fully reserve their right to pursue any causes of action post-confirmation, and any setoff rights arising thereunder.

**13. Post Confirmation Management.** BFT, the Manager of the Debtor, shall manage the affairs of Debtor after confirmation.

## ARTICLE VIII

## RETENTION OF JURISDICTION

After the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction until this Chapter 11 bankruptcy case is closed to perform the following actions:

(a) Ensure that the Plan is fully consummated;

(b) Resolve all matters arising under or relating to the Plan, including, without limitation, its enforcement and interpretation;

(c) Allow, disallow, determine, liquidate or classify, any Claims;

(d) Grant or deny all applications for allowance of compensation and reimbursement of expenses by the professionals retained in this bankruptcy case;

(e) Resolve any motions or applications still pending prior to the Effective Date;

(f) Enter such orders as may be necessary or appropriate to implement or consummate the Plan and all contracts, deeds, instruments made or created in furtherance of the Plan or to enforce all orders, judgments and rulings entered in connection with this bankruptcy case;

(g) Enter a discharge order Final Decree concluding this bankruptcy case

## ARTICLE IX

## DISCHARGE OF DEBTS, INJUNCTION AND RELEASE

**Discharge of Debts:** On the Confirmation date of this Plan, the debtor will be discharged from any debt that arose before Confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in Section 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in Section 1141(d)(6)(B) of the Code.

**Injunction:** As of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, all entities shall be permanently, forever and completely stayed restrained prohibited, barred and enjoined from asserting against the Debtor or the Reorganized Debtor or its assets, property and estate, any other or further Claims, debts, obligations, rights, suits , judgments, damages, actions, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing as of the Effective Date or thereafter arising, at law, in equity or otherwise relating to the Debtor or Reorganized Debtor or any of its assets, property and estate, based upon any act or omission, transaction, agreement, event, or other occurrence taking place or existing on or prior to the Effective Date.

**Plan and Confirmation Order as Release.** From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense, in favor of the Debtor, to any claim or liability released pursuant to Article IX of the Plan.

## ARTICLE X

## CLOSING THE CASE

**1. Bankruptcy Fees.** All fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest pursuant to 31 U.S.C. § 3717, shall be paid through the entry of a Final Decree, or conversion or dismissal of the Debtor's bankruptcy case, whichever is earlier.

**2. Post-Confirmation Reports.** After Confirmation, the Debtor shall file quarterly status reports, and schedule such status conferences as may be necessary until the case is closed.

**3. Closing the Case.** Within 14 days following the full administration of the estate, the

Debtor shall file, on notice to the United States trustee, an application and a proposed order for a

final decree pursuant to Bankruptcy Rule 3022.


Dated: Harrison, NY
      July 22, 2019

*/s/ H. Bruce Bronson*
Counsel for the Debtor and Debtor in Possession

CREATIVE LEARNING SYSTEMS, LLC

By: BFT II LLC, Manager

*By:/s/ Vladimir Breyter*
Vladimir Breyter, President